# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**SILVANO NAVA,**

      **Plaintiff,**

vs.                                                                                 **Civ. No. 00-1723 BB/RLP**

**LARRY G. MASSANARI,**
**Acting Commissioner**
**Social Security Administration,**

      **Defendant.**

## UNITED STATES MAGISTRATE JUDGE'S
## ANALYSIS AND RECOMMENDED DISPOSITION[1]

1.     Plaintiff, Silvano Nava, (Plaintiff herein), filed applications for Disability Income Benefits (DIB) and Supplemental Security Income Benefits (SSI) on September 25, 1997, protectively filed on August 22, 1997, alleging disability due to leg, shoulder and other joint pain and weakness, with an onset date of June 1, 1997. (Tr. 82-84, 206, 112). His applications were denied at the first and second levels of administrative review, and by an Administrative Law Judge following a hearing. (Tr.59, 60, 12-20). Plaintiff appealed the ALJ's decision to the Appeals Council which declined review on October 21, 2000. (Tr.6-7.) The matter before this Court is Plaintiff's Motion to Reverse or Remand the decision of the Commissioner denying benefits. (Docket No. 6).

**I.**     **Standard of Review**

2.     This Court reviews the Commissioner's decision to determine whether the records contain

---

[1]Within ten (10) days after a party is served with a copy of these proposed findings and recommendations, that party may, pursuant to 28 U.S.C. §636(b)(1), file written objections to such proposed findings and recommendations. A party must file any objections within the ten (10) day period if that party seeks appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

substantial evidence to support the findings, and to determine whether the correct legal standards were applied. **Castellano v. Secretary of Health & Human Services**, 26 F.3d 1027, 1028 (10th Cir.1994). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " **Soliz v. Chater**, 82 F.3d 373, 375 (10th Cir.1996) (quoting **Richardson v. Perales**, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). In reviewing the Commissioner's decision, I cannot weigh the evidence or substitute my discretion for that of the Commissioner, but I have the duty to carefully consider the entire record and make my determination on the record as a whole. **Dollar v. Bowen**, 821 F.2d 530, 532 (10th Cir.1987).

3. The Commissioner has established a five-step sequential evaluation process to determine if a claimant is disabled. **Reyes v. Bowen**, 845 F.2d 242, 243 (10th Cir.1988). If a claimant is determined to be disabled or not disabled at any step, the evaluation process ends there. **Sorenson v. Bowen**, 888 F.2d 706, 710 (10th Cir.1989). The burden of proof is on the claimant at steps one through four; the Commissioner bears the burden of proof at step five. **Id.**

### III.  Plaintiff's testimony/representations

4. Plaintiff represented that he experiences dizziness, as well as pain and weakness in his extremities, and pain in his shoulders and ribs, requiring him to rest for three hours after activity, and limiting his ability to kneel, stand and walk. (Tr. 38-39, 112, 123, 133).

### IV.  Medical and Vocational Evidence

5. Plaintiff was born on June 3, 1940. (Tr. 32, 82). He attended school through the 4th grade in Mexico. (Tr. 34) He is illiterate in English (Tr. 169). His past relevant work has been as a farm laborer. (Tr. 117, 34-38, 43).

6. The medical record establishes that Plaintiff was treated for right upper quadrant pain at

Memorial Medical Center Emergency Room on August 4, 1993. (Tr. 189-193). No acute abdominal abnormality was identified, although mild degenerative disc disease of the lumbar spine was noted on x-ray (Tr. 193).

7.      Plaintiff was seen at the Ben Archer Clinic on February 12, 1997, for complaints of rib pain and arm weakness. He was treated for costochondritis and advised to discontinue smoking. (Tr. 151). He returned for a follow-up visit on February 27, 1997. His rib pain had improved, but he continued to complain of right arm weakness and pain. On physical examination, he was tender at the insertion of the right deltoid and over the medial head. He was treated with ibuprofen and again advised to discontinue smoking. (Id.).

8.      Plaintiff alleges a date of onset of disability of June 1, 1997. He was evaluated at the Hot Springs Medical Clinic by Dr. Jesus Gonzalez three days later for complaints of pain and weakness in his upper and lower extremities. (Tr. 177). His smoking history was again recorded. Physical examination was positive for decreased strength of the extremities, although no measurements were recorded. He was assessed as having degenerative joint disease at multiple sites, and given a prescription for Voltaren.

9.      The following day Plaintiff was treated at the Memorial Medical Center, complaining of a three-day history of dizziness, and weakness and pain in his calves and arms. (Tr. 157-167). No cause for the weakness was identified. (Tr. 159). In discharge instructions, Plaintiff was advised: "There are many causes for weakness, some serious, and some not. In your examination today, your weakness does not seem serious, although at times it is difficult to know the exact cause. At times a serious illness begins with weakness." (Tr. 165). Plaintiff was advised to rest, take ibuprofen, continue on a nutritious diet and to see his doctor if he was not better in two days. (Tr. 159, 165).

10.     Plaintiff's next evaluation occurred on January 28, 1998, when he was seen by Nicholas Nillo, M.D.[2], for a consultative evaluation at the request of the disability determination unit. (Tr. 169-171). Plaintiff advised Dr. Nillo that his current symptoms consisted of vague myalgias[3] of the arms and legs which worsened with activity. He also complained of a three-year history of backaches, and a tired-sore feeling with repeated bending and lifting of 35-50 pounds, with sitting more than two hours or walking a mile. He was not taking any medication. Other than diminished visual acuity and poor dental condition, Dr. Nillo could find no abnormalities on physical examination:

> Musculoskeletal Examination . . . both hands could be fully extended, fists made and fingers can be opposed without any apparent difficulty. Grips are symmetrical and within normal limits . . . There was no measurable inequality of motor power or any objective evidence of intrinsic joint pathology.
>
> No abnormalities were detected in the lower extremities. There (sic) were essentially symmetrical and well developed. Motor strength was 5/5 throughout. Examination of the spine revealed shoulders and hips to be level. Range of motion was full and asymptomatic in the cervical and lumbar spine, including hyper extension and rotation. Stance was within normal limits and he could stand on either leg alone, walk on the heels and toes and squat without any apparent difficulty nor discomfort. Straight leg raising was negative, with hamstring tightness. Gait was within normal limits.
>
> Neurological Examination: Cranial nerves II through XII are intact. The reflexes are symmetrical and physiological. Coordination is within normal limits. There was no sensory impairment detected.
>
> Clinical Impression: No objective evidence of significant functional impairment was detected at this examination . . . No abnormalities were detected on palpation of the hands, wrists, elbows, shoulders nor back, feet nor ankles. No objective evidence of weakness nor atrophy was detected in the extremities nor in the proximal muscle groups.

(Tr. 171).

---

[2] Dr. Nillo is a psychiatrist. (Tr. 172).

[3] Myalgia is a term that refers to muscular pain. *See Stedman's Medical Dictionary* 1009 (25th ed.1990).

11.     Plaintiff was evaluated on two additional occasions by Dr. Gonzalez. On February 23, 1998, he was again treated for costochondritis. (Tr. 175). On March 9, 1993, he requested "a letter for SSI." (Tr. 174). Dr. Gonzalez' note indicates his assessment that Plaintiff needed work-up by a neurologist to evaluate his complaints of weakness. However, Dr. Gonzalez did not record any physical examination findings to support this recommendation.

12.     Plaintiff was seen at the Ben Archer Clinic in October 1998 by Dr. Janetzko. Plaintiff complained of weakness and fatigability, particularly in his lower extremities. The physical examination recorded by Dr. Janetzko indicated 4/5 motor strength in all extremities, some loss of muscle strength with repetition and questionable muscle wasting. He recommended that Plaintiff undergo evaluation to determine whether he suffered from myasthenia gravis[4]. The evaluation was not done because of Plaintiff's inability to pay. (Tr. 202). Dr. Janetzko subsequently obtained chest x-rays and copies of Dr. Gonzalez' records (Tr. 201, 203, 200), and on October 13, 1998, prescribed 1-2 tablets of Mestinon daily, to be taken for weakness. (Tr. 199-200). Mestinon is used in the treatment of myasthenia gravis. *1998 Physicians' Desk Reference* at 1256. Dr. Janetzko's records indicate that on October 23, 1998, Plaintiff was advised of the price of this medication which appears to be $24.31 plus $4.00 for 100 tablets, or $14.48 for 60mg/5ml of syrup. (Tr. 199). Plaintiff indicated he could not afford the medication, and that he would contact the doctor when he could. (*Id*.).

**V.     The ALJ's decision**

---

[4]Myasthenia gravis is a disease "characterized by great muscular weakness [without atrophy] and progressive fatigability. It is due to a functional abnormality: lack of acetylcholine or excess of cholinesterase at the myoneural junction, in which nerve impulses fail to induce normal muscle contractions." (Tr. 204). In his decision, the ALJ cited to *The Merck Manual* 16th Ed., at p. 1524 (1992), which states that this condition is characterized by episodic muscle weakness. (Tr. 19).

13. The ALJ decided this case at step two of the sequential evaluation process, finding that Plaintiff's impairments were not severe. [5] The ALJ based this determination on three factors:

   (1) The examination by a consulting physician, Dr. Nillo, which identified no medically determinable impairment;

   (2) Rejection of the diagnosis of myasthenia gravis by treating physician Dr. Janetzko because that diagnosis was "provisional," and

   (3) Plaintiff's refusal to take medication for myasthenia gravis prescribed by Dr. Janetzko, which he termed a lifestyle choice (e.g., choosing to purchase cigarettes rather than medication) preventing confirmation of the diagnosis.

## VI.  Analysis

14. At step two, the ALJ determines whether plaintiff has a severe impairment or combination of impairments. This determination is governed by the Commissioner's severity regulations, 20 C.F.R. §§404.1520(c), §416.920(c). It is based on medical factors alone, and does not include consideration of such vocational factors as age, education, and work experience. **Williams v. Bowen**, 844 F.2d 748, 750 (10th Cir. 1988). While plaintiff bears the burden of proving his disability, at step two plaintiff's burden is "*de minimis*." **Williams**, 844 F.2d at 751.

> "A claimant 'must provide medical evidence that [he had] an impairment and how severe it [was] during the time [he says he is] disabled.' 20 C.F.R. §404.1512(b). Medical evidence consists of signs, symptoms and laboratory findings. **Bernal v. Bowen**, 851 F.2d 297, 300 (10th Cir. 1988). The evidence must come from acceptable medical sources,' including licensed physicians or psychologists. 20 C.F.R. §404.1513(a). A claimant's statements regarding the severity of an impairment are not sufficient. **Bernal,** 851 F.2d at 300.

---

[5] By regulatory definition, a "non-severe" impairment "does not significantly limit (the) ability to do basic work activities" which include "[p]hysical functions such as walking, standing, sitting, lifting, pushing, puling reaching, carrying or handling." 20 C.F.R.§404.1521(a) and (b).

**Flint v. Sullivan**, 743 F. Supp. 777, 782 (D. Kan. 1990) (quotations and brackets by the Court), *aff'd* 951 F.2d 264 (10th Cir. 1991).

15.     The medical record provides substantial evidence that Plaintiff's impairments are not severe. There is no medical evidence that Plaintiff's disc disease, possible myasthenia gravis or chronic obstructive pulmonary disease interfere with his ability to do basic work activities. **Flint**, 743 F. Supp. at 782; 20 C.F.R. §404.1521(b)(1)-(6). Even though the standard at step two is "*de minimis*," the record must contain medical findings consistent with the claimed limitations. **Williams**, 844 F.2d at 750. In this case, the medical record contains no evidence of work or activity restrictions, slight evidence of abnormal findings on physical examination, and little to no medication usage. Plaintiff's failure to take inexpensive prescription medication is in itself substantial evidence of the lack of severity of his underlying condition[6], regardless of whether or not he indeed suffers from myasthenia gravis, for a claimant "must show more than the mere presence of a condition or ailment." *See* **Hinkle v. Apfel**, 132 F.3d 1349, 1352 (10th Cir. 1997).

16.     The ALJ also fulfilled his obligation to develop the record, and a second consultative examination was not necessary. The Commissioner may order a consultative examination when the record contains insufficient medical evidence to make a disability determination. 20 C.F.R.§ 404.1519(a). "The [Commissioner] has broad latitude in ordering" such an examination. **Diaz v. Secretary of Health & Human Servs**., 898 F.2d 774, 778 (10th Cir.1990). The record contains an evaluation of Plaintiff's neurological condition by Dr. Nillo. Dr. Nillo supported his opinion that

---

[6]At Tr. 19-20, the ALJ clearly indicated that he considered the failure to take prescribed medicine as evidence of the non-severity of Plaintiff's impairment, rather than as evidence of failure to follow prescribed treatment which assumes a severe and disabling impairment has been established. *See, e.g.*, **Teter v. Heckler**, 775 F.2d 1104 (10th Cir. 1985).

Plaintiff had no objective evidence of significant functional impairment with specific and detailed with medical signs and explanations, in compliance with 20 C.F.R.§404.1527(d)(ii)(3). No additional evaluation was required.

## VII.  Recommended Disposition

17. For the reasons stated above, I recommend that Plaintiff's Motion to Reverse or Remand Administrative Agency Decision be denied, and that the decision of the Commissioner denying Plaintiff's Applications for DIB and SSI be affirmed.

_____
**RICHARD L. PUGLISI**
**UNITED STATES MAGISTRATE JUDGE**